[Crim. No. 3630.  Second Dist., Div. Three.  Dec. 9, 1942.]

THE PEOPLE, Respondent, v. RAYMOND R. MONTES, Appellant.

Jesse Bach Porter for Appellant.

Earl Warren, Attorney General, and R. S. McLaughlin, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted of the crime of negligent homicide in violation of section 500 of the Vehicle Code. Trial by jury was waived. He appeals from the judgment and the order denying his motion for a new trial.

About 11 p. m. on May 8, 1942, defendant was driving an automobile west on Compton Avenue, and Boyd R. Brady, the decedent, was driving an automobile south on Prairie Avenue, in Los Angeles County. A boulevard stop sign, the reflector type ''with little pieces of glass through . . . the word 'stop,' '' duly erected according to law at the northeast corner of the intersection of said avenues, required the drivers of automobiles approaching said intersection from the east on Compton Avenue to stop before entering Prairie Avenue. As the proximate result of injuries caused by a collision in the intersection between the two automobiles, Boyd R. Brady died on May 9, 1942.

A witness called by plaintiff testified that he was driving an automobile east on Compton Avenue and when he first saw defendant's automobile it was coming toward him on Compton Avenue on the other side of the intersection of Prairie and Compton Avenues; that he first saw decedent's automobile when it was on Prairie Avenue about 250 or 300 feet north of the intersection; that both automobiles were within his vision from the time he first saw them until the impact; that there was no noticeable unusual rate of speed of either automobile, and he could not determine any slackening of speed by either automobile; that he could not determine whether defendant made a boulevard stop because it was night and defendant's automobile was coming toward him and he (the witness) was ''having a pretty fair set of headlights,'' coming toward him and he was dividing his attention between the two automobiles; that the impact occurred in the intersection ''right where the two cars would meet if they were traveling on their own designated sides of the streets''; that the two cars were lying on their sides after the collision; that defendant had ''quite a bump on

top of the head," and a little blood was coming from above his temple; and that defendant said, "the other car did not make the stop," or something like that.

A person, called as a witness by plaintiff, who was in a nearby house at the time of the collision, testified that he did not see the collision, but he was there immediately afterward; that decedent's automobile was lying on the boulevard stop sign which had been "up a few minutes before" on the southwest corner of the intersection; that decedent was hanging by his head in the door of his car; that the boulevard stop signs on the northeast and southwest corners were the reflector type signs; and that the girl who was with the decedent was on the bottom of the car.

A member of the highway patrol testified that he arrived at the scene soon after the accident; that there were no skid marks; that he fixed the point of impact "about 17 feet south of the north prolongation, and approximately 9 feet west of the easterly prolongation"; that defendant said, "the deceased ran the boulevard stop on Compton"; that on the day following the accident the defendant signed a document (received in evidence) which was written in part by the officer and in part by the defendant and which included a statement that defendant went "North on Prairie" and the "other car went through stop"; that the officer then told defendant that an investigation of the cars had been made by placing them together and that the accident could not have happened the way he said it did; that defendant then, on the same afternoon that the statement just referred to was written, wrote another statement wholly in his own handwriting (received in evidence) as follows: "I was coming west on Compton. Didn't make stop. Hit car. Was going around 35 miles. Raymond Montes."

The girl who was riding with Boyd R. Brady testified that they were traveling on Prairie Avenue; that the last she remembered before she was rendered unconscious by the collision was the "playing" of the car radio.

The defendant testified that on the evening of the accident he went to a house on Prairie Avenue "to pick up" his car, and thereafter he traveled along Prairie Avenue, but he did not have any recollection of the accident; that he was traveling on Prairie Avenue and not on Compton.

The question presented on this appeal is whether the evi-

dence was sufficient to justify the decision that the defendant drove his automobile "with reckless disregard of, or wilful indifference to the safety of others," within the meaning of such quoted phrase as it is used in section 500 of the Vehicle Code.

That section, as amended in 1941, provides: "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle with reckless disregard of, or wilful indifference to, the safety of others, the person so operating such vehicle shall be guilty of negligent homicide, a felony . . . "

Prior to the 1941 amendment that section included the phrase, "in a negligent manner or in the commission of an unlawful act not amounting to a felony," instead of the phrase, "with reckless disregard of, or wilful indifference to the safety of others."

At the time of the decision herein by the trial judge, the case of *People* v. *Young*, (1942) 20 Cal.2d 832 [129 P.2d 353], in which the Supreme Court defined the 1941 amendment to said section, had not been decided.

In that case the court stated, "Reckless disregard of the safety of others appearing in section 500 is doing an act while recklessly ignoring the safety of others. It is thus equivalent to, quoting from the definition, the 'intentional doing of an act with wanton and reckless disregard of its possible result.' Wilful indifference to the safety of others, is an intentional lack of regard concerning the safety of others, or 'an intentional doing of something with knowledge that serious injury is a probable result.'"

Generally stated, the facts in that case were: that defendant was driving an automobile about 25 or 30 miles an hour behind a street car which was traveling in the same direction about 20 to 25 miles an hour; the street car stopped gradually at a regular stopping place where there was no marked passenger safety zone on the pavement; defendant did not stop to the rear of the street car as required by section 403 of the Vehicle Code, but proceeded to pass the stopped street car and struck the decedent who had alighted from the right front door of the street car; there was a skid mark extending 47 feet from the place where the automobile stopped toward the point of impact; the incline of the street upon which

defendant was driving was from 5 to 20 per cent. Defendant said that the front of her car was past the door of the street car when decedent alighted and that he stepped onto the top of the front fender of her car; that she had no warning that the street car was going to stop and that it stopped suddenly.

The Supreme Court held in that case that the evidence was insufficient to establish a violation of section 500 of the Vehicle Code, and stated further: "The defendant . . . was merely negligent. . . . She may have been exceeding the speed limit but cannot be said to have been traveling at a particularly excessive speed. . . . The People's evidence shows that the street car stopped gradually, but defendant's failure to observe that was the lack of that care expected of a man of ordinary prudence, that is, ordinary negligence without a high degree of probability of injury to others. . . . Assuming defendant violated that rule [Veh. Code, § 571], the mere violation thereof under the circumstances did not constitute wilful misconduct or reckless disregard of, or wilful indifference to the safety of others."

The evidence in the present case was sufficient to justify a finding that defendant did not make the boulevard stop, did not yield the right of way to the decedent, and did not use due care to observe the car of decedent as it approached and entered the intersection, the view of which intersection was unobstructed for a distance of 250 or 300 feet in the direction from which decedent came.

In the respects just mentioned the defendant was negligent. Defendant was not traveling at a particularly excessive speed as he approached the intersection, and the evidence is not clear as to the rate of speed he was traveling at the time of the collision. The circumstances under which the negligence of defendant occurred were not such that they amounted to recklessly ignoring the safety of others by intentionally doing acts with wanton and reckless disregard of their possible results, and the circumstances were not such that they amounted to an intentional lack of regard concerning the safety of others by intentionally doing something with knowledge that serious injury was a probable result. In the light of the interpretation of the 1941 amendment to section 500 of the Vehicle Code, as stated in the case of *People* v. *Young, supra,* it is concluded that the negligence of

the defendant in the present case did not constitute reckless disregard of, or wilful indifference to, the safety of others.

The judgment and the order denying the motion for a new trial are reversed.

Schauer, P. J., and Shaw, J. pro tem., concurred.