[Crim. No. 3354. Second Appellate District, Division Two.—December 31, 1940.]

THE PEOPLE, Respondent, v. PETER PIANEZZI, Appellant.

Nathan O. Freedman for Appellant.

Earl Warren, Attorney-General, R. S. McLaughlin, Deputy Attorney-General, Burron Fitts, District Attorney, and Thomas F. O'Brien, Deputy District Attorney, for Respondent.

McCOMB, J.—From judgments finding him guilty of murder in the first degree and fixing the punishment as life imprisonment after trial before a jury, defendant appeals.

There are also appeals from the orders denying his motions for a new trial.

Viewing the evidence most favorable to the people (respondent), the facts are:

Shortly after midnight on the morning of October 25, 1937, defendant and another man entered a cafe in the city of Los Angeles, shot and killed a man by the name of George Leslie Bruneman who was sitting at a table in the cafe. The two assailants then left the cafe. Frank Greuzard, an employee of the cafe followed the men out of the room and onto the porch, where he was shot and subsequently died from the injuries which he had received.

Defendant relies for reversal of the judgments on these propositions:

*First: There is no substantial evidence to sustain the finding of the jury that he participated in the murders of which he was convicted.*

*Second: He proved an alibi.*

*Third: The trial court committed prejudicial error in receiving in evidence certain guns found in defendant's possession at the time of his arrest.*

*Fourth: The trial court committed prejudicial error in refusing to permit defendant to introduce (a) statements made by a witness Dean Farris before the grand jury when it was investigating for the purpose of determining who murdered decedent, and (b) evidence that a witness Ella Smith had at other times made statements contradictory to the evidence she gave during the trial of the present action.*

*Fifth: The trial court committed prejudicial error in instructing the jury as follows:*

*(a) "A witness willfully false in one material part of his or her testimony is to be distrusted in others; that is to say, the jury may reject the whole of the testimony of a witness who has willfully sworn falsely as to a material point; and the jury, being convinced that a witness has stated what was untrue as to a material point, not as a result of mistake or inadvertence, but willfully and with the design to deceive, may treat all of his or her testimony with distrust and suspicion, and reject all unless they shall be convinced that he or she has in other particulars sworn to the truth."*

*(b) "Certain evidence was admitted in the trial of this case for the sole and limited purpose of attempted impeachment of certain witnesses. Such evidence is only to be considered by you as tending to affect the credibility of the witness concerning whom such evidence was admitted. Evidence received for the purpose of impeachment of a witness*

*cannot be considered upon the general issue of guilt or inno-
cence of the accused excepting as your judgment in that re-
gard may be affected by your determination of the credibility
of the witness concerning whom the impeachment testimony
was admitted."*

(c) *"By all the evidence in this case upon the point, it
has been established that the death of GEORGE LESLIE
BRUNEMAN, the deceased named in the indictment in ac-
tion number 72994, and the death of FRANK ALBERT
GREUZARD, the deceased named in the indictment in ac-
tion number 72995, occurred as the result of the commission
of the crime of murder and that such murder was murder in
the first degree.*

*"If, therefore, you should find this defendant, PETER
PIANEZZI, guilty of the offense charged in either or both
of the said indictments, it would be your duty to find that
he was guilty of murder in the first degree. Your duty con-
cerning the matter of determination of the penalty is defined
in other instructions given you herewith."*

(d) *"You are instructed that in determining the inten-
tion of the defendant at the time of the transaction com-
plained of, it is important to consider the means used to
accomplish the killing. The intent or intention is manifested
by the circumstances connected with the offense, and the
sound mind and discretion of the accused. All persons are
of sound mind who are neither idiots, nor lunatics, nor af-
fected with insanity.*

*"A person is presumed to intend to do that which he vol-
untarily and willfully does in fact do, and must also be pre-
sumed to intend all of the natural, probable and usual con-
sequences of his own acts. Therefore, if you are satisfied to
a moral certainty and beyond a reasonable doubt that the de-
fendant did assail, on the date mentioned, one Geo. L. Brune-
man violently with a dangerous weapon, likely to kill, and
which did in fact destroy the life of said Frank Albert Greu-
zard the natural presumption is that such assailant intended
death or great bodily harm, and in the absence of evidence
to the contrary this presumption must prevail."*

(e) *"The Court further instructs the jury, that it is the
law of this State, that all persons concerned in the commis-
sion of a crime, whether they directly committed the act con-
stituting the offense, or knowingly and with criminal intent*

*aided and abetted in its commission, shall be prosecuted, tried and punished as principals and are equally guilty.''*

*(f) ''The legal definition of 'aid' is not different from its meaning in common parlance. To 'aid' means to assist, to supplement the efforts of another. To 'abet' means to bait or excite. The word 'aid' does not imply guilty knowledge or criminal intent, whereas 'abet' includes knowledge of the wrongful purpose of the actual perpetrator of the crime, and counsel and encouragement in the crime.*

*''To authorize the conviction of one as an 'aider' and 'abettor' of a crime, it must be shown not only that he aided and assisted therein, but also that he abetted the act, that is to say, that he criminally or with guilty knowledge and intent aided the actual perpetrators in the commission of the act or crime.''*

*(g) ''The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.''*

*Sixth: The trial court committed prejudicial error in denying defendant's motions for a new trial on the ground of newly discovered evidence.*

*Seventh: The trial court committed prejudicial error in beginning the trial of another criminal action pending against defendant before the jury in the present case had reached a verdict.*

Defendant's first proposition is untenable. An examination of the record discloses substantial evidence taken in connection with the inferences which the jury may have reasonably drawn therefrom to sustain each and every material finding of fact upon which the judgments were necessarily predicated, including the finding that defendant perpetrated the crimes. For example, Mrs. Huddel, wife of the proprietor of the cafe where the murder was committed, testified that she looked into the face of the defendant before he entered the cafe and she identified him as the man who shot and killed George Bruneman. Witness Farr, a bar tender in the cafe who was standing about three feet from defendant at the time of the murder, testified that he had both a side and front view of the murderer's face, and identified defendant as the man who shot and killed George Bruneman.

From the circumstances above set forth it is clear that the jury's inference that defendant either killed Frank Greuzard when he stepped onto the porch of the cafe or aided and abetted in so doing, finds substantial support in the evidence. The case of *People* v. *Lamson,* 1 Cal. (2d) 648, 653 [36 Pac. (2d) 361], strongly relied upon by appellant is of no value as a precedent. As was said by our Supreme Court in *People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778], the Lamson case decided nothing except that the judgment of the trial court should be reversed. In the same case our Supreme Court limited the rule on circumstantial evidence stated in *People* v. *Staples,* 149 Cal. 405 [86 Pac. 886], to the facts of that case.

█ The rule in California is now that a court on appeal will not attempt to determine the weight of the evidence but will decide whether on the face of the evidence it can be held that sufficient facts could have been found by the jury to warrant the inference of guilt, and before the verdict of a jury will be set aside on appeal on the ground of insufficiency of the evidence it must be made clearly to appear that upon no hypothesis whatever is there substantial evidence to support the conclusion reached by the trier of fact. If the circumstances reasonably justify the verdict of the jury, the opinion of the appellate court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not justify the appellate court in interfering with the determination of the jury (*People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778]).

█ The argument which counsel has addressed to the court upon this subject was a proper argument to present to the trial jury but cannot be considered by us, since there is substantial evidence to support the findings of the jury. The strength or weakness of identification, incompatibility of and discrepancies in testimony, if any, and the uncertainty of witnesses in giving testimony are matters solely for the consideration of the triers of fact in the first instance and for the consideration of the trial judge on a motion for a new trial.

█ Defendant's second proposition is also untenable. The law is established that the question of whether or not defendant has established his alibi is one of fact, the determination of which upon conflicting evidence, as in the instant

case, will not be disturbed on appeal. (*People* v. *Krug*, 10 Cal. App. (2d) 172, 175 [51 Pac. (2d) 445].)

Relative to defendant's third proposition, four guns found in defendant's apartment at the time of his arrest were received in evidence and at the time they were offered in evidence defendant objected to their reception. The district attorney then stated:

"Well, I do not claim or contend or will state, at any time claim or contend in any manner that these four guns were used at the death of Bruneman or the death of Greuzard or injury to Miss Ingram. They are certainly different guns."

To the district attorney's statement the court remarked:

"With that explanation I do not think it is necessary for the court to advise the jury any further. All right; that is all, officer."

It may be conceded, in view of the holding in *People* v. *McCall,* 10 Cal. App. (2d) 503, 505 [52 Pac. (2d) 500], and *People* v. *Yee Fook Din,* 106 Cal. 163, 166 [39 Pac. 530], that such evidence was inadmissible; however, from an examination of the record and particularly in view of the fact that the district attorney stated in the presence of the jury that he conceded that the guns were not the ones used in the murders, we are of the opinion that the reception of such evidence did not result in prejudice to defendant. Therefore, we may not reverse the judgment because of the alleged error, since the state Constitution provides that no judgment shall be reversed because of the erroneous reception of evidence, unless after an examination of the record the appellate court shall be of the opinion that the error resulted in a miscarriage of justice (art. VI, sec. 4½ of the Constitution).

Defendant's fourth proposition (a) is without merit. The trial court refused to permit the defendant to prove that the witness Dean Farris had testified before the Grand Jury that he was unable to describe or identify the second man involved in the murder of decedent. This ruling was correct. Such inquiry was directed to immaterial and collateral matter and was, therefore, inadmissible under the rule that a witness may not be impeached upon irrelevant and collateral matter (*People* v. *Factor,* 125 Cal. App. 618, 621 [13 Pac. (2d) 984]; *People* v. *Pollock,* 31 Cal. App. (2d) 747, 757 [89 Pac. (2d) 128]; see, also, 27 Cal. Jur. [1926] 152, sec. 125, note 14).

One of the issues in the present case was whether defendant participated in the murder and it was entirely immaterial for the purpose of this trial, assuming that the evidence disclosed that he did, who his partner in crime might be.

■ The trial court's ruling of which defendant complains in his fourth proposition (b) was correct, for the reason that the witness Smith admitted that prior to the trial she had made statements to other persons, which were contradictory to the testimony she gave at the time of the trial. This being true, there was no reason for introducing the alleged impeaching testimony.

■ The instruction set forth in paragraph (a) of defendant's fifth proposition was a correct statement of the principles of law embodied in it and was not erroneous, because of the inclusion therein of the word "willfully". (See *People* v. *Sprague,* 53 Cal. 491, 493; *People* v. *Clark,* 84 Cal. 573, 582 [24 Pac. 313].)

■ The instruction set forth in paragraph (b) of defendant's fifth proposition was correct. The insertion of the word "attempted" therein did not fairly make the instruction susceptible of the inference that the court was instructing the jury that defendant had attempted but was not able to impeach the witnesses. This is particularly true, in view of the fact that the instructions must be read as a whole, and among other instructions given to the jury by the court was the following:

"With the facts the Court has nothing to do. I have not expressed, nor intend to express, nor have I intimated or intend to intimate, any opinion as to what witnesses are, or are not, worthy of credence, what facts are, or are not, established, or what inferences are to be drawn from the evidence adduced. If any expression of mine has seemed to indicate an opinion relating to any of these matters, such expressions must be entirely disregarded by you."

■ The instruction set forth in paragraph (c) of defendant's fifth proposition was free from error and did not deprive the jury of their right to determine whether or not defendant had committed the crime (*People* v. *Watts,* 198 Cal. 776, 801 [247 Pac. 884]). It was likewise proper for the court under the facts of this case to limit the jury to a verdict finding the defendant either not guilty or guilty of murder in the first degree (*People* v. *Watts, supra,* 793; *People* v. *Perkins,* 8 Cal. (2d) 502, 516 [66 Pac. (2d) 631]).

. The instruction set forth in paragraph (d) of defendant's fifth proposition was a correct statement of the principles of law therein stated (*People* v. *Jones*, 160 Cal. 358, 369 [117 Pac. 176]).

 The instructions set forth in paragraphs (e) and (f) of defendant's fifth proposition were likewise properly read to the jury. From the evidence in the present case it appears that two or more persons participated in the murders of which defendant stands convicted. The court, therefore, properly gave an instruction in the language of section 971 of the Penal Code, for it may be that the jury believed from the evidence that defendant did not fire the shot which killed decedent Greuzard but that one of the other participants in the crime did so, and that defendant aided and abetted in the commission of the offense.

 The instruction set forth in paragraph (g) of defendant's fifth proposition was a correct statement of law (sec. 1127 (c) of the Penal Code). It was unnecessary to give any other instruction upon the doctrine of flight (1127 (c), Pen. Code). *People* v. *Goodwin*, [1927] 202 Cal. 527, 540 [261 Pac. 1009]; *People* v. *Sainz*, [1912] 162 Cal. 242, 246 [121 Pac. 922]; *People* v. *Jones*, 160 Cal, 358 [117 Pac. 176], upon which defendant relies were all decided prior to the adoption by the legislature in 1929 of section 1127 (c) of the Penal Code and such cases are, so far as the point here involved is concerned, superseded by the code section.

 Defendant on his motion for a new trial alleged that the witness Farris' wife would upon a retrial testify that said witness had stated to her that he could not identify "those fellows", referring to the men who had murdered the decedents. This alleged newly discovered evidence is purely of an impeaching nature and, therefore, is not ground for granting a motion for a new trial (*People* v. *Snyder*, 36 Cal. App. (2d) 528, 535 [97 Pac. (2d) 976]).

 Defendant's final contention is without merit. While the jury in the present case was deliberating and before they had returned a verdict, the trial of defendant was commenced in the same court on another indictment which had been returned against him. Defendant has failed, in fact he has not attempted, to point out wherein any prejudice resulted to him from the trial court's following this procedure. Therefore, even though it be assumed that an error

existed in such procedure, we would be required to disregard the same under the mandate of article VI, section 4½ of the Constitution of the State of California.

For the foregoing reasons the judgments and orders are and each is affirmed.

Moore, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied on January 30, 1941. Curtis, J., Houser, J., and Carter, J., voted for a hearing.