Filed 5/8/15  P. v. Gonzales CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND GONZALES,<br><br>    Defendant and Appellant. | B258145<br><br>(Los Angeles County<br>Super. Ct. No. LA077407) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Martin Larry Herscovitz, Judge.  Affirmed.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Jessica C. Owen, Deputy Attorney General, for Plaintiff and Respondent.

INTRODUCTION

Defendant and appellant Raymond Gonzales (defendant) was convicted of attempted robbery (Pen. Code, §§664, 211[1]).  On appeal, defendant contends that insufficient evidence supports his conviction.  We affirm the judgment.

## BACKGROUND

### A.      Factual Background

#### 1.      *Prosecution Evidence*

In the morning of April 3, 2014, Michael Trent and his wife, Jennifer Trent,[2] were walking near an intersection in Studio City when they saw defendant approaching them from the opposite direction.  Defendant's clothes were dirty, he had a long beard, and it was "fair to say he looked homeless."

Defendant advanced within a foot of Jennifer, "turned very quickly and aggressively" toward her, "got very close to" her face, and aggressively asked her, "Do you have any spare change?"  Defendant appeared to be angry.  Jennifer testified that defendant was "very tall and was kind of standing over me."  Jennifer told defendant that she did not have any change, and continued walking.

Defendant was then between Jennifer and Michael, preventing Michael from continuing to walk in the same direction unless he went around defendant.  Defendant however did not stand in Michael's way to try to keep him from going past him.  With an "aggressive expression on his face," defendant said to Michael three times is a "slightly raised" tone, "Give me your fucking wallet.  I've got something in my pocket.  Give me

---

[1]      All statutory citations are to the Penal Code unless otherwise noted.

[2]      Because Michael Trent and Jennifer Trent share the same surname, we refer to them individually by their first names.

your fucking wallet." Both Michael and Jennifer thought that defendant was implying he had a weapon. From defendant's "imposing manner," Jennifer thought defendant's "next step" would be to attack her husband.

Jennifer testified that Michael "was taken off guard completely," and seemed "confused and didn't really know how to react." Michael testified that he was "startled," stumbled into a tree, and ultimately walked around the tree past defendant. Defendant's statement and his aggressive tone "scared" Jennifer, so she called for Michael to "just keep walking." When Michael walked past defendant, defendant aggressively and angrily yelled offensive language at Michael.

Jennifer dialed 911 on her cellular telephone. Defendant continued to yell at the couple as they walked away from the area, and therefore they entered a populated Starbucks to await the arrival of the police.

Los Angeles Police Department Officer Ricardo Izquierdo responded to Jennifer's telephone call, and encountered defendant. Officer Izquierdo searched defendant's pockets and found a metal rod, and a sharpened stick that was about six inches long and about one inch in diameter.

### 2. Defendant's Evidence

Defendant testified on his own behalf. He admitted to an incident involving the Trents. That day he woke up in an alley "hungry," "pissed off," "angry," and in need of money for a bus ride. He admitted asking the Trents for change, but he denied that he said, "I've got something in my pocket." He testified that "maybe" he said "give me your wallet" or "give me your fucking wallet." He said that after the encounter, Michael "ran like a scared rabbit, [that] is the way it looked." When asked if he had ever hurt people who did not give him money, defendant responded, "No. I hurt people regularly because I like to hurt people, but I didn't hurt [the Trents]."

3

### B. Procedural Background

Following a trial, the jury found defendant guilty of attempted robbery in violation of sections 664 and 211. The trial court sentenced defendant to state prison for a term of two years. The trial court awarded defendant custody credit, and ordered him to pay various fees, fines and penalties. Defendant filed a timely notice of appeal.

## DISCUSSION

### A. Standard of Review

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' [Citations.]" (*People v. Scott* (2011) 52 Cal.4th 452, 487.)

### B. Applicable Law

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." "An attempt to commit a crime is comprised of 'two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' (§ 21a; see § 664 [prescribing punishment].)" (*People v. Medina* (2007) 41 Cal.4th 685, 694.)

4

For an attempt to commit a crime, "[o]ther than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense. [Citations.]" (*People v. Medina, supra,* 41 Cal.4th 685, 694.) "It is true that an element of force or fear must be proved in order to establish a conviction for robbery under Penal Code section 211. It is not necessary, however, for this element to be reflected in the overt act of an attempted robbery if the crime has not progressed to that point. . . . Since a completed robbery would have required a force-and-fear element, an attempted robbery *may* also include this element of the offense, but it is erroneous to say that the crime must have progressed this far in order to constitute an attempt." (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862-863.) As defendant concedes, attempted robbery may occur when victims do not comply with the threat of force. (*People v. Medina*, *supra*, 41 Cal.4th at pp. 694-695; *People v. Gray* (1998) 66 Cal.App.4th 973, 979, 980.)

### C.     Analysis

Defendant contends that insufficient evidence supports the jury's findings that he intended to take property from Michael by force or fear. Defendant argues that there is not substantial evidence that he intended to induce fear or that Michael was fearful. We disagree.

There is evidence that defendant, who appeared to the Trents to be homeless, woke up on the morning of the incident in an alley, angry, and in need of money. Defendant approached the Trents and aggressively asked Jennifer, while in very close proximity to her, whether she had any spare change. Defendant aggressively and repeatedly said to Michael, "Give me your fucking wallet. I've got something in my pocket. Give me your fucking wallet." Both Michael and Jennifer thought that defendant was implying he had a weapon, and Jennifer thought defendant's "next step" would be to attack Michael. The jury reasonably could infer that defendant intended to take property from Michael by force or fear.

Defendant contends that "the evidence did not show that [Michael] was feeling fear . . . ." As stated above, however, a person may commit attempted robbery without

5

having placed the intended victim in fear. (*People v. Medina*, *supra*, 41 Cal.4th at p. 694; *People v. Vizcarra*, *supra,* 110 Cal.App.3d at pp. 862-863.)

Even if Michael's fear was relevant to defendant's conviction for attempted robbery, "It is not necessary that there be direct proof of fear; fear may be inferred from the circumstances in which the property is taken. [Citation.] [¶] If there is evidence from which fear may be inferred, the victim need not explicitly testify that he or she was afraid. [Citation.] Moreover, the jury may infer fear '"from the circumstances despite even superficially contrary testimony of the victim.'" [Citations.] [¶] The requisite fear need not be the result of an express threat or the use of a weapon. [Citations.] . . . All that is necessary is that the record show ""conduct, words, or circumstances reasonably calculated to produce fear . . . .'"" [Citation.] [¶] Intimidation of the victim equates with fear. [Citation.] An unlawful demand can convey an implied threat of harm for failure to comply, thus supporting an inference of the requisite fear. [Citation.]" (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775.)

There is evidence that Michael felt startled and stumbled into a tree. Jennifer testified that the situation was scary. Defendant testified that Michael "ran like a scared rabbit . . . ." Immediately after the incident, Jennifer called 911 and the couple took refuge in a public Starbucks to await the arrival of the police. Sufficient evidence supports defendant's conviction for attempted robbery.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

7